**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION**

**KELLEY M. MILLER**                                                                    **PLAINTIFF**

**vs.**                                      **CASE NO.   1:05-CV-00065**

**JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY**                              **DEFENDANT**


## OPINION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kelley Miller appeals the decision of the

Commissioner of the Social Security Administration to deny her claim for Disability Insurance

benefits.  Both parties have moved for judgment on the administrative record and submitted

supporting briefs.  In this judicial review, the Court must determine whether there is substantial

evidence in the administrative record to support the ALJ's decision that the Plaintiff is not

disabled.[1]

For the reasons discussed below, the Court affirms the final decision of the

Commissioner.

## II.  FACTUAL BACKGROUND

Ms. Miller was 42 years old at the time of the hearing before the ALJ.  Ms. Miller quit

school after the sixth grade, but she later obtained her high-school equivalency degree.  Prior to

---

[1]  Administrative Law Judge Mark S. Anderson (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated March 19, 2005. [R. at 13-20]. Plaintiff appealed the decision by the ALJ to the Appeals Council. The Appeals Council declined Plaintiff's request for review on July 14, 2005. [R. at 4-6].

the onset of her health problems. Ms. Miller worked as a CNA in nursing homes and in private

duty, where her primary job responsibilities included dressing, feeding and bathing patients.  Ms.

Miller performed her CNA duties primarily on weekends while at the same time working various

factory jobs.  She worked at Land-O-Frost on the assembly line.  She also worked at Kohler

Company, where she worked in the cook room, conducted inspections and cleaned racks.  Her

most strenuous job at Kohler required her to lift double-bowled sinks weighing approximately

six pounds and to place them onto a grinding machine.  Ms. Miller also had prior jobs as a

dishwasher in a restaurant and on an assembly line in a plant in Bald Knob.

Ms. Miller testified that she worked through May of 2003, at which time she stopped

working due to pain and swelling in her elbow.  She also experienced swelling, pain and

numbness in her hands which kept her from being able to "hold on to anything."  At the hearing,

Ms. Miller testified that she was experiencing swelling and pain in her feet to the degree that it

made walking difficult.  Ms. Miller's primary care physician, Dr. Yates, removed her from work

as a result of her physical problems.

In an effort to determine the source of her pain and swelling, Ms. Miller saw Dr. Lacy

Lowery, a rheumotologist.  Ms. Miller testified that Dr. Lowery was the first doctor to mention

that she might have fibromyalgia and arthritis.

Ms. Miller testified that she could sit for a period of 30 minutes without difficulty, but

that sitting for longer periods would cause her to experience lower back and hip pain similar to

that experienced during menstruation.   She further testified that standing for long periods caused

her great discomfort.  She testified that could walk for ten minutes consecutively but that doing

so would cause pain and swelling in her knees and ankles.  Ms. Miller stated that she often

needed assistance walking, which she would usually get by holding on to her husband or other family member.  Ms. Miller does not have a cane or walker, but she has access to her mother's walker at home.  Ms. Miller stated that she could occasionally lift a weight of five pounds, but that sometimes she could not hold even a cup of coffee due to problems with her hands.  Ms. Miller stated that she could only use a screwdriver for a short period of time before experiencing pain and swelling in her hands.  Ms Miller testified that she could drive for a period of thirty (30) minutes at most.

William Elmore, a vocational expert, testified briefly at the hearing.  Mr. Elmore reviewed Plaintiff's past relevant work history and set out the exertional skill levels for each job.  Mr. Elmore described all of Plaintiff's past six jobs as unskilled, four of which required medium exertion and two of which required light exertion.

### III.  LEGAL PRINCIPLES

#### A.      Substantial Evidence Standard of Review

In this action for judicial review pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), the Court must determine whether there is substantial evidence on the record as a whole to support the decision of the Commissioner.  *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).  This Court's review is deferential;  the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *Prosch,* 201 F.3d at *1012*.  In determining whether substantial evidence exists, the court will consider evidence that detracts

from the Commissioner's decision as well as evidence that supports it.  *Craig v. Apfel,* 212 F.3d

433, 435-36 (8th Cir. 2000).  However, the Commissioner's findings may not be reversed merely

because evidence may exist to support the opposite conclusion.  *Mitchell v.* Shalala, 25 F.3d 712,

714 (8th Cir. 1994).  As long as substantial evidence in the record supports the Commissioner's

decision, the decision may not be reversed either because substantial evidence exists in the record

that would have supported a contrary outcome, *id.,* or because this Court would have decided the

case differently.  *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

> **B.     Disability Determinations and the Burden of Proof**

The Social Security Regulations (the "Regulations") prescribe a five-step sequential

analysis to determine whether a claimant is disabled. 20 C.F.R. § 404.1520 & 416.920 (2003);

*Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

First, the Commissioner will consider a claimant's work activity.  If the claimant is

engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §

404.1520(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's

physical or mental ability to perform basic work activities."  *Dixon v. Barnhart,* 353 F.3d 602,

605 (8th Cir. 2003); *accord Lewis v. Barnhart,* 353 F.3d 642, 645 (8th Cir. 2003).  The United

States Supreme Court has explained:

> The ability to do basic work activities is defined as "the abilities
> and aptitudes necessary to do most jobs." . . . Such abilities and
> aptitudes include "[p]hysical functions such as walking, standing,
> sitting, lifting, pushing, pulling, reaching, carrying, or handling";
> "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding,

4

> carrying out and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting."

*Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. § § 404.1521(b), 416.921(b)).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, or work experience.  20 C.F.R. § 404.1520;  *Kelley,* 133 F.3d at 588.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity ("RFC") to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(4)(iv); 404.1545(4);  *see Lewis,* 353 F.3d at 645-46 ("RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, 'what the claimant can still do' despite his or her physical or mental limitations.") (citing *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987);  20 C.F.R. § 404.1520(e) (1986)); *Dixon, supra.*  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 404.1545(3).  The Commissioner also will

consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  20 C.F.R. § 404.1520(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience."  Clarification of Rules Involving Residual Functional Capacity Assessments, etc., 68 Fed.Reg. 51,153, 51,155 (Aug. 26, 2003).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Id.;* 2 0 C.F.R. § 404.1520(4)(v);  *Dixon, supra; Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel,* 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel,* 204 F.3d 853, 857 (8th Cir. 2000).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(r)(v).  At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir. 2004)).

# IV.   DISCUSSION

In its decision, the ALJ found that Plaintiff was not disabled at the fifth step of the sequential evaluation process.  Because Plaintiff met her burden of proof in the first four steps, the burden of proof shifted at the last step to show that Plaintiff could perform other work in the economy.  *See* 20 C.F.R. § 404.1520(f) (2005).  The ALJ concluded that Plaintiff is limited to sedentary work.  The ALJ also found that Ms. Miller has the ability to lift 10 pounds occasionally, five pounds frequently, to stand and walk for two hours in an eight-hour work day, and to sit for six hours in an eight-hour work day with normal breaks.  The ALJ further concluded that based upon Ms. Miller's RFC that there are jobs existing in significant numbers in the economy that Plaintiff can perform.

Plaintiff, in her brief, argues that the Commissioner erred because: (1) the ALJ improperly discounted the opinion of Plaintiff's treating physician; (2) the ALJ improperly evaluated and discounted Plaintiff's subjective reports of pain; and (3) the ALJ failed to explain or identify the record evidence supporting his ruling on Plaintiff's residual functional capacity.

## A.      The ALJ's Discounting of the Opinion of Plaintiff's Treating Physician

Plaintiff contends that the ALJ improperly discounted the opinion of Dr. Yates, Plaintiff's treating physician.

On December 14, 2004, Dr. Yates completed a residual functional capacity ("RFC") form on Ms. Miller.  He indicated that Ms. Miller's impairments affected: (1) her lifting/carrying, but that she could occasionally lift 5 lbs. and frequently lift 3 lbs: (2) her standing/walking, but that she could stand and/or walk 20-30 minutes in an eight hour work day;  (3) her sitting, but that she could sit 20-30 minutes in an eight hour work day.   Dr. Yates noted that there were no medical

findings to support his assessments.  (R. 156-58).

In a letter dated December 22, 2004, Dr. Yates wrote that Ms. Miller's current diagnosis was most closely consistent with fibromyalgia.  His letter reads in pertinent part:

> The difficult thing with Ms. Miller is that all of her objective findings have been negative.   She has complained of significant joint pains and swelling.  All of her inflammation and arthritis, though, have remained negative.  Dr. Lowery [a rheumatologist] has never ben able to document any synovitis or inflammation of localized joints.
>
> Lacking objective evidence, we are left dealing with the subjective.  Fibromyalgia is a diagnosis that is made based on symptoms and the systematic elimination of other diagnoses.  In her case this has occurred.  We are left basically with her subjective complaints of pain in her limbs, joints, and large muscle groups.  I have no tests that I can run to prove or disprove these complaints.  At this point I have no reason not to believe that she, indeed, is suffering from the discomfort she describes.  Based on her description of her pain and symptoms, I would say that it would be difficult for her to work, but again I have nothing I can present from an objective standpoint other than to say her symptoms could be consistent with fibromyalgia.

(R. at 154).

Dr. Yates referred Ms. Miller to Dr. Lowery, a rheumatologist.  Dr. Lowery diagnosed Plaintiff with meralgia paresthetica, a painful mononeuropathy of the lateral femoral cutaneous nerve, but which does not normally cause long-term problems.  Dr. Lowery also noted the possibility of fibromyalgia.  Dr. Lowery observed that Plaintiff showed full and symmetric muscle strength, no evidence of synovitis in any of her joints, and a normal range of motion in her shoulders, elbows, wrists, hands, back, and knees.  (R. 117-119, 115, 110, 111).  Dr. Brown, a neurologist, performed a nerve conduction study to address the numbness and pain in both of Plaintiff's hands and to rule out carpal tunnel syndrome.  The study was normal.  Dr. Brown also

noted that Plaintiff maintained full motor strength in her lower and upper extremities, that she
showed no muscle atrophy from disease, and that she demonstrated the ability to walk on her
heels and toes.  (R. 124-25).

It appears that ALJ relied heavily upon the fact that none of the doctors who treated the
Plaintiff were able to document any medical indications to support a medical impairment causing
Plaintiff's pain or reported symptoms.  It further appears that the ALJ was influenced by the fact
that no physician was able to document any swelling in her joints or extremities.

The ALJ apparently discounted Dr. Yates' opinion in part because it lacked clinical notes
or tests that would support his conclusion.  This is a recognized basis for discounting a doctor's
treating physician's opinion.  *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir.
2002)(treating physician's opinion not entitled to substantial weight unless well-supported by
medically accepted clinical and laboratory diagnostic techniques, and consistent with other
substantial evidence); see also 20 C.F.R. § 404.1527(d)(2).  Additionally, a physician's opinion
on the ultimate issue of disability is not binding on the Secretary.  20 C.F.R. §§ 404.1527(e)(1);
416.927(e)(1).

The regulations specifically require the ALJ to assess the record as a whole to determine
whether the treating physician's opinions are inconsistent with other substantial evidence in the
record.  20 C.F.R. § 404.1527(d)(2).  Here, it appears that while the ALJ diminished the weight
given to certain of Dr. Yates' assessments of the Plaintiff's ability to work, he accepted his
diagnosis of fibromyalgia in concluding that the Plaintiff could not perform her past relevant
work.  Having reviewed the entire record and the ALJ's reasoning, the Court cannot say that the
ALJ's decision to discount in part the opinion of the claimant's treating physician lies outside the

available "zone of choice." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

**B.    The ALJ'S Evaluation of Plaintiff's Subjective Complaints of Pain**

Plaintiff contends that the ALJ improperly discounted her subjective complaints of disabling and extreme pain.  It is important to recognize that the ALJ did not completely reject Plaintiff's complaints of pain and resulting disability.  The ALJ accepted that she was likely to suffer from some level of discomfort, a finding that factored in his finding that she was limited to sedentary work.  (R. 17).  He did, however, reject the contention that Plaintiff's pain prevented her from doing any kind of work.

Thus, the ALJ did not hold that Plaintiff has no pain . Rather, he held that Plaintiff's pain is not significant enough to reduce her functional capacity to work. The mere fact that working may cause pain or discomfort does not mandate a finding of disability. *Ostronski v. Shater*, 94 F.3d 413, 418 (8th Cir. 1996).  Indeed, it is well recognized that a claimant can work despite pain unless that pain is disabling.  As the Eighth Circuit has noted, "millions of people do every day." *Wheeler v. Sullivan*, 888 F.2d 1233, 1238 (8th Cir. 1989).

In *Polaski v. Heckler*, 739 F.2d 1320, 1332 (8th Cir. 1984), the Eighth Circuit listed five factors an ALJ is required to examine when analyzing a claimant's subjective complaints of pain: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  While the ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's subjective complaints, he is not required to explicitly discuss each *Polaski* factor. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

10

The ALJ specifically stated that he had considered the *Polaski* factors.  (R. 16-17).  While he found that the medical findings were not consistent with the Plaintiff's allegations of disabling pain, he also found that this finding alone was insufficient to disregard her subjective complaints.  This is a proper statement of the law.  An "ALJ may not disregard a claimant's subjective complaints of pain *solely* because there exists no evidence in support of such complaints."  Simonson v. Schweiker, 699 F.2d 426, 429 (8th Cir. 1983)(emphasis added).

The ALJ further determined that the Plaintiff's daily activities were inconsistent with her reports of disabling pain.  Plaintiff admitted in completing her application for disability that she could care for her personal needs, complete some housework, shop for food and clothes, prepare some meals (up to 1 hour), manage financial matters, drive and watch TV.  (R. 83-84).  Plaintiff also indicated that she did not suffer from unusual fatigue or require naps or rest.  The ALJ found that the restricted pattern of activities was inconsistent with the medical evidence.  Thus, he concluded that her limited daily activities were the result of a lifestyle choice given the lack of medical evidence to support a need for inactivity.  Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations.  *Eichelberger v. Barnhart*, 390 F.3d 584 (8th Cir. 2004).  The ALJ was also influenced by the fact that the Plaintiff's use of medication did not suggest the presence of a completely disabling condition.

Plaintiff argues that the ALJ failed to credit Plaintiff for her consistent and exemplary work history.  While the ALJ did not mention this factor, given his stated findings of various *Polaski* factors sufficient to justify his conclusion, the Court cannot find that this failure alone justifies rejecting the ALJ's conclusions.

Under the facts of this case and considering the record as a whole, the Court cannot say

that the ALJ improperly assessed Ms. Miller's subjective claims of pain.

      **C.**      **The ALJ's Residual Functional Capacity Assessment**

      The fourth step in the sequential evaluation process requires the ALJ to determine a claimant's  Residual Functional Capacity ("RFC").  Plaintiff also contends that the ALJ improperly assessed her RFC, primarily because he failed to support his conclusion with specific references to the record.

      A claimant's residual functional capacity is what he or she can do despite his or her limitations.  20 C.F.R. § 404.1545.  It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's residual functional capacity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001);  *Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir. 2004).  The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations.  *Id.*   A "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  "[S]ome medical evidence" must support the determination of the claimant's RFC, *Dykes v. Apfel,* 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace."  *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000).

      The ALJ determined that Ms. Miller has the residual functional capacity to perform sedentary work-related activities.  20 C.F.R. § 404.1545.  The ALJ assessed Ms. Miller's limitations as follows: lifting ten pounds occasionally, 5 pounds frequently, standing and walking 2 hours in an 8 hour workday and sitting about 6 hours in an 8 hour workday with normal breaks. In reaching these conclusions, the ALJ apparently adopted the limitations on the assessment of a

non-examining medical consultant.  (R. at 18,143-150).  The ALJ was required to consider the medical consultant's opinion.  20 C.F.R. § § 404.1527(f)(2)(i), 416.927(f)(2)(i)(2003). Additionally, on this record, and because the ALJ did not inappropriately discount Plaintiff's subjective complaints of pain and the assessment of her treating physician, the Court concludes that there is sufficient record evidence to justify the  ALJ's determination of the Plaintiff's RFC.

## CONCLUSION

Because substantial evidence exists in the record to support the Commissioner's determination that the claimant Kelley Miller is not disabled,

IT IS HEREBY ORDERED THAT the Commissioner's decision be, and it is hereby, AFFIRMED.

IT IS SO ORDERED THIS  13th day of February, 2007.


   /s/Garnett Thomas Eisele
   UNITED STATES DISTRICT JUDGE